IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>   v.<br><br>MAURICIO MELENDREZ,<br><br>        Defendant. | Crim. No. 19-cr-307 (RMB)<br><br>**MEMORANDUM ORDER** |

**APPEARANCES**
Philip R. Sellinger
Sara A. Aliabadi
U.S. Attorney's Office for the District of New Jersey
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
Camden, NJ 08101

    *On behalf of the United States*

Thomas Young
Assistant Federal Public Defender
800 Cooper St., Suite 350
Camden, NJ 08102

    *On behalf of Defendant*

**BUMB, U.S. District Judge**

    This matter comes before the Court upon a disputed portion of the Defendant's Presentence Report. *See* PSR ¶ 55. Having reviewed the submissions of the parties the Court agrees with the Defendant that he should not be sentenced according to the demarcation between methamphetamine (actual) and

methamphetamine for the reasons stated below.

On or about April 25, 2019, Defendant Mauricio Melendrez ("Defendant") pled guilty to a one-count Information charging him with attempting to distribute and attempting to possess with intent to distribute five grams or more of crystal methamphetamine, also known as "Ice," a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). [Docket No. 31 at 1.] As part of his Plea Agreement, Defendant stipulated that his role in the offense involved approximately 877 grams of crystal methamphetamine. [*Id.* at 6.] Accordingly, the United States Probation Office, in the Presentence Report, assigned the Defendant a base offense level of 34 in accordance with United States Sentencing Commission Guidelines § 2D1.1(c)(3) (USSG). PSR ¶46. However, Defendant disputes the application of the sentencing guidelines, specifically USSG § 2D1.1(c)(3), which provides for a four level increase in his base level offense because of the purity of the methamphetamine involved in his conviction.

The Sentencing Reform Act of 1984 created mandatory sentencing guidelines intended to increase uniformity in sentencing decisions by federal judges. *United States v. Booker*, 543 U.S. 220, 246 (2005). Though compliance with the sentencing ranges provided in the Guidelines was initially mandatory, the United States Supreme Court invalidated portions of the Act which rendered the Guidelines mandatory in *United States v. Booker*. 543 U.S. 220, 233, 245 (2005). In doing so, the Court made the Guidelines effectively advisory, requiring a sentencing court to consider the applicable sentencing range, as well as the other statutory sentencing

concerns provided in 18 U.S.C. § 3553(a), while providing flexibility to sentencing courts to tailor a defendant's sentence appropriately. *Id.* at 245–46 (2005).

Current sentencing guidelines differentiate methamphetamine with a purity of less than 80 percent from purer forms of methamphetamine, either methamphetamine (actual) or crystal methamphetamine ("Ice"). *See* USSG §2D1.1. Pursuant to the Guidelines, Defendants convicted of offenses involving methamphetamine (actual) or Ice are sentenced under a ten-to-one ratio compared against lower purity methamphetamine as set forth in the Drug Conversion Table. *Id.* Such upward adjustment is based substantially on the premise that "controlled substances are often diluted and combined with other substances as they pass down the chain of distribution," and, thus, the purity level of the controlled substance is an indicator of a defendant's prominence within a criminal enterprise. USSG §2D1.1 cmt. 27(c).

Given the advisory nature of the Guidelines, sentencing courts may deviate from intentional disparities provided within the base offense levels. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007) ("The Government acknowledges that the Guidelines are now advisory and that, as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.") (alteration in original) (internal citations omitted). The Court has also suggested that adherence to the applicable Guidelines range is appropriate only when the Guidelines reflect "empirical data and national experience," as well as "exemplify the Commission's exercise of its characteristic institutional role." *Id.* at

3

109 (internal citations omitted). In instances in which the Guidelines do not appear to reflect these purposes, deviation from the Guidelines has been found to be appropriate. *See, e.g.*, *id.* at 111; *United States v. Nawanna*, 321 F. Supp. 3d 943, 950, 958 (N.D.Iowa 2018); *United States v. Pereda*, No. 18-00228-CMA, 2019 U.S.Dist.LEXIS 19183, at *7 (D.Colo. Feb. 6, 2019,).

There is much to be said for Defendant's argument that while there was once reliable evidence to support the Sentencing Commission's assumption that large quantities are associated with high purities and high purities were associated with "kingpin" defendants, the data seems to call that into question and the Government has not done a sufficient job to give the Court comfort regarding the basis for disparate sentencing treatment.

It is not disputed that the Defendant was trafficking in methamphetamine with a purity above 80%, as Defendant stipulated to an offense involving approximately 877 grams of crystal methamphetamine as a part of his plea agreement. [Docket No. 31 at 6]. However, in response to the sentencing recommendations, Defendant argues he should not be subject to an increased base offense level due to the purity of the methamphetamine. *See* PSR ¶55. Rather than a base offense level 34, for an offense involving "at least 500 G but less than 1.5 KG of Methamphetamine (actual), or at least 500 G but less than 1.5 KG of 'Ice'," Defendant believes he should receive a base offense level of 30, for an offense involving "[a]t least 500 G but less than 1.5 KG of Methamphetamine." USSG §2D1.1. Defendant argues that the disparate treatment of purer forms of methamphetamine was designed to more severely punish

4

those who are higher level traffickers, based on the assumption that controlled substances become increasingly diluted as they move through the distribution chain. Because the purity level of nearly all confiscated methamphetamine is substantially pure, Defendant argues that the purity metric is outdated and no longer representative of an individual's level of control in a drug distribution enterprise. *Id.* In support of his argument, Defendant relies on Drug and Enforcement Agency data and emerging case law which disavows the application of the purity adjustment.

     The Defendant has submitted recent data provided by the Drug and Enforcement Administration ("DEA") that suggests that highly pure methamphetamine may no longer be a particularly strong proxy for culpability; methamphetamine seizures sampled by the DEA Methamphetamine Profiling Program ("MPP") in the first half of 2019 averaged 97.2 percent purity, consistent with a trend of high purity—over 95 percent—over the last several years. Drug Enf't Agency, DEA-DCT-DIR-008-21, <u>2020 Drug Enforcement Administration National Drug Threat Assessment</u> 19–20 (March 2021). Though base offense levels for methamphetamines in the quantities at issue in this case were amended in 2014, the upward adjustment based on purity has remained in effect for decades. USSG, Supplement to Appendix C - Amendments to the Guidelines Manual, Amendment 782 (November 1, 2014).

     The Government opposes Defendant's request for a downward adjustment based on the sentencing disparity tied to methamphetamine purity, contending that a rejection of the upward adjustment found in the Sentencing Guidelines is an

5

argument for Congress, rather than the Court. In support, the Government points to other district courts which have rejected this argument, and highlights that 66 percent of those convicted of methamphetamine trafficking are sentenced within the advisory Guidelines. Because of the danger of highly potent methamphetamines, and the specific facts of the Defendant's conviction considered in light of the relevant factors set forth in 18 U.S.C. § 3553(a), the Government finds the upward adjustment based on purity to be appropriate.

     The task of this Court is to rule on the disputed portion of the Defendant's Presentence Report prior to making an ultimate determination regarding the Defendant's appropriate sentence in light of the 18. U.S.C. § 3553(a) factors. In reviewing the materials available to the Court for this task, the Defendant has made a credible argument that the Sentencing Guidelines fail to reflect the, perhaps unfortunate, realities regarding the prominent distribution of highly pure methamphetamine. Though the Government contests Defendant's request for a downward adjustment, they have failed to provide any empirical support for the connection between methamphetamine purity and culpability to counter what Defendant has presented.  Perhaps the Government is able to, or will do so in other cases, but it has not done so here.  In the absence of any or any indication from the Sentencing Commission that such deviation remains appropriate, this Court is persuaded to exercise of its discretion in support of the Defendant's argument.

For these reasons, the Court finds that the Defendant should receive a base offense level of 30.

Sentencing shall be set for May 4, 2022, at 10:00 a.m.


<u>April 20, 2022</u>                                                    <u>s/Renée Marie Bumb</u>
Date                                                                    Renée Marie Bumb
                                                                        U.S. District Judge